# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:20-CV-673-RJC-DCK

| | |
|---|---|
| PATRICIA NORCOM, | ) |
|     Plaintiff, | ) |
| v. | )    **MEMORANDUM AND** |
| NOVANT HEALTH, INC., | )    **RECOMMENDATION** |
|     Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Partial Remand" (Document No. 6). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

## I. BACKGROUND

Plaintiff Patricia Norcom ("Norcom" or "Plaintiff") initiated this action with the filing of a Complaint against Novant Health, Inc. ("Novant" or "Defendant") in the General Court of Justice, Superior Court Division, in Mecklenburg County, North Carolina on October 30, 2020. (Document No. 1-1). In her Complaint, Plaintiff brings two claims against Defendant: (1) violation of the Fair Labor Standards Act's ("FLSA") anti-retaliation provision at 29 U.S.C. § 215(a)(3); and (2) violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*. Id. As to Plaintiff's NCWHA claim, Plaintiff alleges that she is bringing the claim on behalf of a class and therefore seeks treatment as a class action. Id. at p. 10.

Plaintiff's claims arise out of her former employment with Novant as a Certified Registered Nurse Anesthetist ("CNRA") from 2002 through 2020.  Id. at p. 7.  She alleges that "due to lack of work during the Covid-19 pandemic," Novant "sent [her] home early" and forced her to use her "accrued Paid Time Off…to cover full and partial-day absences occasioned by" the lack of work. Id. at p. 4.  According to the allegations in her Complaint, Paid Time Off is reserved for employees' personal absences rather than absences on account of reduced operational capacity.  Id. at p. 5. Plaintiff purports to bring her NCWHA claim on behalf of a class of "Novant's North Carolina employees who Novant has classified as exempt under the FLSA and who were subject to [such] deductions from their accrued Paid Time Off ('PTO') accounts" because of Novant's lack of work for such employees during the pandemic-related disruptions to the ordinary workflow.  Id. at p. 4. With respect to her individual claim under the FLSA anti-retaliation provision, Plaintiff alleges that "Novant terminated [her] employment because she engaged in protected activity by protesting conduct that Norcom reasonably believed violated the FLSA, i.e. the deduction of her accrued PTO benefits resulting from absences occasioned by Novant's operating needs."  Id. at p. 5.  She contends that Novant terminated her thirteen days after her supervisor learned of her complaint to Human Resources that the PTO deductions likely violated the FLSA.  Id. at p. 9.

On December 3, 2020, Defendant filed a "Notice Of Removal" in this Court (Document No. 1).  On January 4, 2021, Plaintiff filed the pending "Motion For Partial Remand" (Document No. 6) and "Memorandum In Support Of Motion For Remand Of Claims Under State Law" (Document No. 7).  Novant filed its "Response In Opposition To Plaintiff's Motion For Remand Of Claims Under State Law" (Document No. 9) on January 19, 2021.  Plaintiff filed her "Reply In Support Of Motion For Partial Remand" (Document No. 10) on January 26, 2021.  The pending

motion has now been fully briefed and is ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

Subject-matter jurisdiction "is a threshold issue," and district courts must consider the issue of jurisdiction "before addressing the merits" of a claim. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009). Indeed, district courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); see also Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 382 (1998) ("[n]o party need assert the [jurisdictional] defect. No party can waive the defect, or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own").

The "burden of proving subject matter jurisdiction" lies with the party asserting that federal jurisdiction exists – that is, "the party seeking removal." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); and Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). A defendant can remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction…to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004); and Rose v. SLM Fin. Corp., 2007 WL 674319, at *1 (W.D.N.C. Feb. 28, 2007) ("[a] defendant is entitled to remove a case brought in state court to federal court if the plaintiff could have brought it in federal court originally as a civil action 'arising

3

Case 3:20-cv-00673-RJC-DCK   Document 14   Filed 07/16/21   Page 3 of 12

under' federal laws" (quoting Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Manuf., 545 U.S. 308, 312 (2005))). Original jurisdiction exists in federal district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; see Franchise Tax Bd. of California v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear…only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"). District courts "must strictly construe removal jurisdiction" since it "raises significant federalism concerns." Mulcahey, 29 F.3d at 151. This means that where "federal jurisdiction is doubtful, a remand is necessary." Id.

In cases where a federal district court has original jurisdiction over at least one claim, the court shall also "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Two or more claims (state and federal) form part of the same case or controversy for supplemental jurisdiction purposes where they "derive from a common nucleus of operative fact" and "would ordinarily be expected to [be tried] in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1996). District courts retain "discretion as to whether to remand a case to state court," a decision which "involves consideration of 'principles of economy, fairness, convenience and comity.'" Hartman v. Univ. of Maryland at Baltimore, 595 F. App'x 179, 180 (4th Cir. 2014) (quoting Carnegie-Mellon v. Cohill, 484 U.S. 343, 357 (1988)). Indeed, the Honorable Robert J. Conrad, Jr. stated in an Order denying a motion to remand that district courts should consider such principles of judicial economy "[w]hen determining whether to exercise supplemental jurisdiction

4

over state-law claims," and accordingly join "all claims arising out of a common nucleus of operative fact" to promote such principles. Hall v. Bank of Am. Corp., 2019 WL 215617, at *3 (W.D.N.C. Jan. 16, 2019). Moreover, "[s]upplemental jurisdiction under 28 U.S.C. § 1367 'is a broad jurisdictional grant.'" Id. (quoting Exxon Mobil Corp. v. Allapattah, 545 U.S. 546, 558-59 (2005)).

District courts can "decline to exercise supplemental jurisdiction" under four circumstances:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

### III. DISCUSSION

**1. Supplemental Jurisdiction Under § 1367(a)**

By the pending motion, Plaintiff "seeks remand of her state law wage claim under the North Carolina Wage and Hour Act." (Document No. 7, p. 1).[1] She contends that this Court does not have supplemental jurisdiction over the NCWHA claim, as she alleges that "it is completely unrelated to her federal claim, and thus, does not share a common nucleus of operative fact." Id. Plaintiff explains her argument as to why the Court does not have supplemental jurisdiction over the NCWHA claim as follows. Plaintiff suggests that her FLSA retaliation claim does not share a common nucleus of operative fact with her NCWHA claim because "[t]o state a claim for retaliation under the FLSA, Plaintiff need not allege [or prove] a violation of the FLSA to engage

---

[1] There is no dispute that her FLSA retaliation claim is properly before this Court pursuant to federal question jurisdiction under 28 U.S.C. § 1331 – that claim is not the subject of Plaintiff's remand motion. (Document No. 6, p. 2).

in a protected act." Id. at p. 6. Instead, Plaintiff suggests, her retaliation claim – unlike her NCWHA claim – is not a "direct legal challenge to Defendant's PTO policy." Id. To state a successful FLSA retaliation claim, Plaintiff argues, "she must merely allege [a] good faith belief that a violation occurred and that her complaints put Defendant on notice that she intended to assert her FLSA rights." Id. In this way, she contends that the PTO policy's legality is not an issue with respect to her FLSA claim – unlike her NCWHA claim – and "[h]er FLSA claim is limited solely to her complaints that Defendant's use of her PTO violated the federal statute and that Defendant's subsequent termination of her employment was motivated by her complaints." Id.

On the other hand, her NCWHA claim, she argues, *is* concerned with the legality of the PTO policy. Id. That claim, she describes, asserts that "Defendant impermissibly hijacked employees' PTO banks to use for its own purpose, not for the legitimate purposes identified in the PTO policy that are for the [personal] benefit of the employees." Id. Greatly exaggerating the difference between the two claims, Plaintiff contends that "the only true link between Plaintiff's FLSA claim and her class action claim under state law is the employer-employee relationship." Id. at p. 7. That, unquestionably, is a significant oversimplification.

The undersigned disagrees with Plaintiff's characterization of her two claims as completely unrelated to one another. Indeed, the Court finds that the questionable legality of Defendant's PTO policy was the genesis of both her claim under the NCWHA statute and her retaliation claim under the FLSA. Indeed, but for Defendant's alleged conduct with respect to the PTO policy, Plaintiff would not have complained to Human Resources – for which, she alleges, she was ultimately retaliated against through her termination of employment. Moreover, but for Defendant's alleged conduct with respect to forcing employees to use PTO when there was not enough work to fill a full workday, she would not have had reason to bring her NCWHA claim.

6

Thus, it is undoubtedly a stretch – and a mischaracterization of the facts – to contend that the claims do *not* arise from a common nucleus of operative fact. Indeed, the undersigned struggles to see how Plaintiff can argue to the contrary.

Just like the Plaintiffs attempted to argue in Hall, here, Plaintiff "seem[s] to argue that a court can exercise supplemental jurisdiction over state-law claims only if those claims share the same 'nucleus' of legal elements," which is "not the test." Hall, 2019 WL 215617, at *4. Defendant relies upon the correct test, as reaffirmed in the Honorable Robert J. Conrad, Jr.'s decision in Hall: "it is immaterial how different the elements forming the respective state and federal causes of action are…all that matters for determining whether supplemental jurisdiction exists is if a plaintiff alleges the same core set of facts to support the respective state and federal-law claims." Id.; see (Document No. 9, p. 6). Even if the state and federal law claims do "not contain [the same] 'essential federal ingredients,'" if they "revolve around the same set of facts," then the federal court "may properly exercise supplemental jurisdiction over the state-law claims." Hall, 2019 WL 215617, at *4. Plaintiff's reliance upon a Third Circuit case which suggests that for a court to exercise supplemental jurisdiction over a state law claim, the state law claim should be "merely [an] alternat[e] theor[y] of recovery based on the same acts," is misguided. See (Document No. 7, p. 4 (quoting Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979)). Defendant correctly points out as much. (Document No. 9, p. 4).

Furthermore, even relying upon the language from White v. County of Newberry, S.C. that Plaintiff quotes time and again in her reply brief, the undersigned finds that Plaintiff's state law claim under the NCWHA and her federal claim for retaliation in violation of the FLSA arise from a common nucleus of operative fact. 985 F.2d 168 (4th Cir. 1993); see (Document No. 10, pp. 2-4). In White, the Fourth Circuit reiterated that "supplemental jurisdiction does not encompass

7

claims when one count is 'separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count.'" 985 F.2d at 171 (quoting Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 848 (4th Cir. 1974)).  The Fourth Circuit also stated that for a federal court to exercise supplemental jurisdiction, "the related claims 'need only revolve around a central fact pattern'" because "supplemental jurisdiction is not limited to restatements of the same basic ground for recovery."  United States *ex rel.* Bunk v. G'vt Logistics N.V., 842 F.3d 261, 272 (4th Cir. 2016) (quoting White, 985 F.2d at 172).  Given that one of the elements that Plaintiff must allege to plead a successful retaliation claim under the FLSA is that she "engaged in an activity protected by the FLSA," resort to discussion of Plaintiff's *assertion of* the questionable legality of Novant's PTO policy would be necessary for a Court analyzing such claim.  Darveau v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008).

Undoubtedly, Plaintiff's belief that Novant's alleged misuse of its PTO policy to offset its own reduced operational capacity during the pandemic was contrary to law is a fact that must be referenced when the Court evaluates both her FLSA retaliation claim and the NCWHA state law claim.  The legality of the PTO policy is relevant to her NCWHA claim because that *is* the essence of such claim – she herself admits that such claim "is a direct legal challenge to Defendant's PTO policy." (Document No. 7, p. 6).  Furthermore, as to the FLSA retaliation claim, although she need not *prove* "that an underlying FLSA violation occurred with respect to her PTO bank," she does need to allege as one element of the FLSA claim her engagement in protected activity (i.e., her filing of a complaint with Human Resources based on her belief that Novant violated the FLSA).  See Minor v. Bostwick Labs, Inc., 669 F.3d 428, 438 (4th Cir. 2012) ("the remedial purpose of the FLSA requires intracompany complaints [of potential FLSA violations] to be considered protected activity within the meaning of its antiretaliation provision").  Both claims

revolve around the same fact pattern – thus clearly satisfying the tests that Plaintiff contends support her position. As in Jimenez-Orozco v. Baker Roofing Co., "each claim is *not* separately determinable without any reference to the facts alleged with regard to the other count," and therefore, supplemental jurisdiction over Plaintiff's state law claim is proper. 2006 WL 8438693, at * (E.D.N.C. Mar. 28, 2006).

As a result, the undersigned respectfully recommends that the Court should deny Plaintiff's motion for partial remand because it does have supplemental jurisdiction over Plaintiff's NCWHA claim pursuant to 28 U.S.C. § 1367(a). See Jimenez-Orozco, 2006 WL 8438693, at *5 ("[s]uch a factual overlap can hardly be deemed 'superficial,' and consolidation of these issues for trial would serve the interest of judicial economy"); and Hall, 2019 WL 215617, at *3 (citing judicial economy as a consideration for a federal district court to weigh in the decision whether to exercise supplemental jurisdiction over a state law claim).

## 2. Plaintiff's Alternative Argument That The Court Should Decline Discretion Under § 1367(c)

In the alternative, Plaintiff argues that the Court should decline to exercise supplemental jurisdiction over the NCWHA claim in its discretion pursuant to 28 U.S.C. § 1367(c) "because Plaintiff's class action claims raise a novel theory of recover[y] under [the NCWHA]…and her class action claim will substantially predominate over her individual retaliation claim under federal law." Id. at p. 2.[2] As to both of these arguments, the Court is unconvinced.

---

[2] The Court notes that while Plaintiff may have cited the incorrect statutory provision in her Complaint, the undersigned declines to impose the harsh interpretation that Defendant advances – that is, that Plaintiff's claim centers upon a dispute over payment at termination, the focus of N.C. Gen. Stat. § 95-25.7, the provision that Plaintiff mistakenly cites in her Complaint. See (Document No. 1-1, p. 13); (Document No. 9, pp. 11-12). It is evident from the allegations in the Complaint that Plaintiff intended to cite N.C. Gen. Stat. § 95-25.8, the provision related to unlawful deductions from wages.

Plaintiff first argues that the Court should decline to exercise supplemental jurisdiction over the NCWHA claim because it:

> raises a novel issue of state law in that it seeks to extend the reach of North Carolina's unlawful deductions statute to instances where the employer forces employees to authorize deductions from their own wages (PTO bank) for Defendant's own benefit rather than the typical claim where the employer directly deducts wages from employees' paychecks without authorization.

(Document No. 7, p. 11). Pursuant to 28 U.S.C. § 1367(c)(1), Plaintiff argues that "[t]his novel theory of recovery is best left for a North Carolina court to resolve." Id. Nonetheless, just because Plaintiff contends that her "state law claims present questions of statutory [] interpretation that no North Carolina court has decided, this does not necessarily render these issues 'novel or complex.'" Jimenez-Orozco, 2006 WL 8438693, at *7 (citing Arrington v. Colleen, Inc., 2000 WL 34001056, at *3 (D. Md. Aug. 7, 2000)); see (Document No. 9, p. 12). Furthermore, particularly where the other three prongs of § 1367(c) do not counsel in favor of rejecting discretion to exercise supplemental jurisdiction, the undersigned declines to recommend that the Court do so in this case for the reasons already explained.

With respect to Plaintiff's argument that the Court should remand and decline to exercise supplemental jurisdiction over her NCWHA claim because that claim substantially predominates over the FLSA retaliation claim, the Court is not persuaded. She contends that "[t]he parties and the Court will primarily be consumed with litigating the class action, including [issues related to class certification and]…additional discovery related to liability…related to the PTO policy…across the class." (Document No. 7, p. 12). On the other hand, Plaintiff argues, her "FLSA claim is individual to her, and requires discovery limited to Defendant's purported reason(s) for terminating her employment." Id. "[A]t this stage of the litigation," such concerns are "speculative" – "manageability" concerns associated with the burden of litigating a class action

10

claim along with an individual federal claim are outweighed by the convenience and economy of trying two factually related claims in the same action versus "splitting [the] litigation into two parallel state and federal tracks at this juncture." Jimenez-Orozco, 2006 WL 8438693, at *1 (affirming district court's prior order and denying motion for reconsideration); and Jimenez-Orozco v. Baker Roofing Co., 2005 WL 8159356, at *2-*3 (E.D.N.C. July 15, 2005).

Moreover, the issue of time spent litigating class action-specific items is not a factor in a court's analysis of whether "state issues substantially predominate." Gibbs, 383 U.S. at 726. Instead, the Court considers "proof[,]…the scope of the issues raised, or [] the comprehensiveness of the remedy sought." Id. Here, as in McLaurin v. Prestage Foods, Inc., "[w]hile the class action on the state law claims could involve many more plaintiffs than the…FLSA claim[], the [] basis of the FLSA claim[] and the state law claim[] are virtually indistinguishable." 271 F.R.D. 465, 471 (E.D.N.C. Nov. 10, 2010).

And, even if the state law claim *did* substantially predominate over Plaintiff's individual FLSA retaliation claim, "Section 1367(c) provides that dismissal of the remaining state claims is discretionary, not mandatory." A.P. by S.P. v. Allegro Sch., Inc., 2017 WL 4330363, at *8 (D.N.J. Sept. 29, 2017); and Jimenez-Orozco, 2006 WL 8438693, at *7 ("the decision to remand state law claims under section 1367(c) is committed to the sound discretion of the district court"). In this instance, where the Court finds that trying the related claims in the same court better promotes judicial economy, the undersigned will respectfully recommend that the Court decline to discretionarily remand the NCWHA claim to state court.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion For Partial Remand" (Document No. 6) be **DENIED**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: July 16, 2021

David C. Keesler
United States Magistrate Judge